USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/14/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
  LARRY WHITT,                                               :

                                      Plaintiff,  :
                                                   :              1:15-cv-136-GHW
                    -v -                                     :
                                                   :        MEMORANDUM OPINION
PROSPER FUNDING LLC and PROSPER  :             AND ORDER
MARKETPLACE, INC.,                           :
                                                 :
                                    Defendants.  :
------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

       Plaintiff Larry Whitt brought this action against Defendants Prosper Funding LLC and Prosper Marketplace, Inc. (together, "Prosper"), alleging that Prosper discriminated against him based on a disability, in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and the corresponding provisions of state and municipal law. Prosper moves to stay or dismiss this action and to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., and Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court holds that Whitt entered into an enforceable agreement to arbitrate his claims in this case, and that the appropriate remedy under the circumstances is to dismiss rather than stay the case in favor of arbitration. Accordingly, Prosper's motion to dismiss and to compel arbitration is granted.

**I.    Background**

    **A.    Whitt's Allegations**

       According to the allegations in the complaint, Prosper operates a peer-to-peer lending service that connects potential borrowers with potential investors. *See* Dkt. No. 1 (Complaint) at ¶ 8. Prosper also services each loan on behalf of matched borrowers and investors. *Id*. On September 1, 2014, Whitt, who is deaf, applied for a loan through Prosper's website. *Id*. ¶¶ 14-15. In the process of attempting to confirm his identity, Whitt called Prosper using a Video Relay

Service, which is a service that allows a hearing impaired individual to communicate by telephone using a sign language interpreter as a mediator. *Id.* ¶¶ 18-19. Prosper informed Whitt that its policy was to not accept calls made using a Video Relay Service and that it would not accept his call on that basis. *Id.* ¶ 23. In connection with this policy, Prosper required Whitt to provide additional proof of identity and suspended his account. *Id.* ¶¶ 34-50. Whitt alleges that Prosper's conduct violated the ADA and the corresponding state and municipal statutes. *Id.* ¶¶ 51-88.

      B.      **Agreement to Arbitrate**

According to the evidence attached to Prosper's motion, at the time that Whitt applied for a loan through Prosper's website, the website required all applicants to confirm their acceptance of Prosper's Borrower Registration Agreement (the "Agreement"). *See* Dkt. No. 25 (March 19, 2015 Declaration of Allyson Bryant) ("Bryant Decl. I") at ¶ 4. The website specifically required applicants to click a box adjacent to the bolded text "**Clicking the box below constitutes your acceptance of** . . . the borrower registration agreement." *See* Dkt. No. 41 (April 29, 2015 Declaration of Allyson Bryant) ("Bryant Decl. II"), Ex. 1 (Screenshot). The term "borrower registration agreement," which was underlined and shaded blue, was rendered as a hyperlink to the Agreement itself. *Id.*; Bryant Decl. II at ¶ 4. This text appeared near the bottom of the webpage, immediately above a "Continue" button. *See* Bryant Decl. II, Ex. 1. An applicant could not complete a loan application without clicking the box indicating his or her acceptance of the Agreement. Bryant Decl. I at ¶ 4. Whitt completed a loan application using Prosper's website. *Id.* ¶ 8.

The Agreement provided, in relevant part, that "[a]ny Claim shall be resolved, upon the election of either [Prosper] or [the applicant], by binding arbitration administered by the American Arbitration Association or JAMS, under the applicable arbitration rules of the administrator in effect at the time a Claim is filed." Bryant Decl. I, Ex. B ("Agreement") at ¶ 22(b). "Claim" was defined as "any dispute, claim, or controversy (whether based on contract, tort, intentional tort, constitution, statute, ordinance, common law, or equity, whether pre-existing, present, or future, and whether

2

seeking monetary, injunctive, declaratory, or any other relief) arising from or relating to this Note or the relationship between [the applicant] and [Prosper] (including claims arising prior to or after the date of this Agreement . . . .)." *Id.* ¶ 22(a)(iii). Additionally, the Agreement contained the following cost-sharing provision:

> [Prosper] will pay all filing and administration fees charged by the administrator and arbitrator fees up to $1,000, and [Prosper] will consider [the applicant's] request to pay any additional arbitration costs. If an arbitrator issues an award in [Prosper's] favor, [the applicant] will not be required to reimburse [Prosper] for any fees [Prosper has] previously paid to the administrator or for which [Prosper is] responsible. If [the applicant] receive[s] an award from the arbitrator, [Prosper] will reimburse [the applicant] for any fees paid by [the applicant] to the administrator or arbitrator.

*Id.* ¶ 22(d).

Under the Agreement, an applicant could opt out of the above arbitration requirement by submitting to Prosper written notice of an intent to do so to within 30 days after accepting the Agreement. *Id.* ¶ 22(i). Whitt did not submit such a notice. *See* Dkt. No. 35 (Declaration of Adam Shajnfeld) at ¶ 5.

## II. Procedural History

Whitt filed the instant complaint in January 2015. Shortly thereafter, Prosper notified Whitt that it had elected to arbitrate his claims through JAMS pursuant to the Agreement and requested that he stipulate to the dismissal of his complaint in favor of such arbitration. *See* Dkt. No. 26 (Declaration of Bradley J. Leimkuhler), Ex. A. Whitt refused to do so.

Prosper now moves to dismiss or stay this action and to compel arbitration pursuant to the terms of the Agreement, the FAA, and Rule 12(b)(6). Prosper argues that Whitt accepted the Agreement, including its arbitration provision, when he applied for a loan through Prosper's website, that Whitt's claims are covered by the Agreement's arbitration provision, and that the costs of arbitration do not prevent Whitt from vindicating his federal statutory rights in the arbitration forum. *See* Dkt. No. 24 ("Prosper Mot."); Dkt. No. 33 ("Prosper Reply"). In opposing Prosper's motion, Whitt argues that he did not, in fact, assent to the Agreement, and that, even if he did, the

costs of arbitration effectively prevent him from vindicating his statutory rights in the arbitration forum.  *See* Dkt. No. 29 ("Whitt Opp.").

**III.   Analysis**

The FAA was enacted to "replace judicial indisposition to arbitration with a national policy favoring [it] . . . ."  *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (internal quotation marks omitted) (alteration in original).  Under Section 2 of the FAA, arbitration agreements relating to transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Sections 3 and 4 of the FAA require courts to stay the litigation of claims subject to an arbitration agreement and to compel their arbitration upon motion of either party to the agreement.  *See* 9 U.S.C. §§ 3, 4.  Where all of a plaintiff's claims are arbitrable, however, the court may dismiss the entire case instead of staying it.  *Robinson v. Entm't One US LP*, No. 14-cv-1203 (AJN), 2015 WL 3486119, at *11 (S.D.N.Y. June 2, 2015).

In deciding a motion to compel arbitration, "the court applies a standard similar to that applicable [to] a motion for summary judgment."  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also id.* ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability.").  Thus, "it is proper (and in fact necessary) to consider . . . extrinsic evidence when faced with a motion to compel arbitration," *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 CIV. 839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001)), and "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried," *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *accord Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) ("Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a

4

genuine issue of material fact that must be resolved by a fact-finder at trial."). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense." (internal quotation marks omitted)).

In determining whether to compel arbitration, the Court must conduct the following inquiries:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

### A.     Whether the Parties Agreed to Arbitrate

"Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).  Under New York law, "a party seeking arbitration need only prove the existence of a valid arbitration agreement by a preponderance of the evidence." *Couch v. AT&T Servs., Inc.*, No. 13-cv-2004 (DRH) (GRB), 2014 WL 7424093, at *3 (E.D.N.Y. Dec. 31, 2014).  "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999). "Pursuant to this principle, in the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have

at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Starke v. Gilt Groupe, Inc.*, No. 13-cv-5497 (LLS), 2014 WL 1652225, at *2 (S.D.N.Y. Apr. 24, 2014) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010)). One manner of demonstrating such constructive knowledge is to "affirmatively click a box on [a] website acknowledging awareness of and agreement to the terms of [a contract] before . . . [being] allowed to proceed with further utilization of the website," thereby executing a "clickwrap" agreement. *Berkson v. Gogo LLC*, ---F. Supp. 3d---, No. 14-CV-1199, 2015 WL 1600755, at *28 (E.D.N.Y. Apr. 9, 2015) (internal quotation marks omitted). "In New York, clickwrap agreements are valid and enforceable contracts." *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08-cv-5463 (CM) (GWG), 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011).

Here, in order to complete a loan application using Prosper's website, Whitt was required to click a box adjacent to the bolded text "**Clicking the box below constitutes your acceptance of . . . the borrower registration agreement**," where the term "borrower registration agreement" was conspicuously rendered as a hyperlink to the Agreement itself. *See* Bryant Decl. I at ¶ 4; Bryant Decl. II at ¶ 4; Bryant Decl. II, Ex. 1. Whitt thereby indicated that he had at least constructive knowledge of the terms of the Agreement and that he assented to those terms. Thus, Prosper has demonstrated that Whitt accepted the terms of the Agreement, including its arbitration provision, when he applied for a loan.

In his opposition papers, Whitt suggests that he was not even constructively aware of the terms of the Agreement because those terms were viewable only by following a hyperlink. *See* Whitt Opp. at 5. Whitt, however, does not contend that the hyperlink at issue was insufficiently conspicuous, and cites no authority indicating that a reasonably prudent website user lacks sufficient notice of terms of an agreement that are viewable through a conspicuous hyperlink. Moreover, Whitt simply ignores an abundance of persuasive authority—with which this Court agrees— supporting a proposition to the contrary. *See, e.g., Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 840-41

6

(S.D.N.Y. 2012) (enforcing a forum selection clause that could be viewed only by following a hyperlink and reasoning that "[a] reasonably prudent offeree would have noticed the link and reviewed the terms before clicking on the acknowledgment icon" (internal quotation marks omitted)); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 454 (E.D.N.Y. 2013) (same); *Nicosia v. Amazon.com, Inc.*, ---F. Supp. 3d---, No. 14-cv-4513 (SLT) (MDG), 2015 WL 500180, at *7 (E.D.N.Y. Feb. 4, 2015) (enforcing an arbitration clause that could be viewed only by following a hyperlink and reasoning that the plaintiff "was put on inquiry notice of the current terms [of the Conditions of Use] each time he made a purchase, as a conspicuous hyperlink to the current Conditions of Use was presented to and agreed to by . . . Plaintiff[ ], each and every time [he] made a purchase" (internal quotation marks omitted)); *Starke*, 2014 WL 1652225, at *3 (enforcing an arbitration clause that could be viewed only by following a hyperlink and reasoning that "[r]egardless of whether he actually read the contract's terms, [the plaintiff] was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them"); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-cv-4263 (JFB) (AKT), 2013 WL 5328324, at *6 (E.D.N.Y. Sept. 23, 2013) ("Several courts have enforced . . . agreements where the circumstances indicated that website users must have had actual or constructive notice of the site's terms, and have manifested their assent to them, *i.e.*, [where] the hyperlink to the terms and conditions of use was made apparent to the average user." (citation and internal quotation marks omitted)); *Bassett v. Elec. Arts Inc.*, No. 13-cv-04208 (MKB) (SMG), 2015 WL 1298644, at *4 (E.D.N.Y. Feb. 9, 2015) (collecting cases for the proposition that "[f]ederal courts have consistently enforced clauses contained in clickwrap agreements" that could be viewed only by following a conspicuous hyperlink); *Berkson*, 2015 WL 1600755, at *31-32 (collecting cases for the propositions that "'terms of use' will be enforced when a user is encouraged by the design and content of the website and the agreement's webpage to examine the terms clearly available through hyperlinkage," and that such

terms are enforceable "where the hyperlinked 'terms and conditions' is next to the only button that will allow the user to continue use of the website").

Whitt further argues that the Agreement is unenforceable because, four days *after* he assented to it, he was deprived of the ability to review or discuss it due to Prosper suspending his account. *See* Whitt Opp. at 4-5.  Even accepting its factual premise (which Prosper disputes, *see* Prosper Reply at 3-4), this argument is frivolous.  Not surprisingly, Whitt fails to identify any authority suggesting that a party's inability to access a contract after accepting it could retroactively annul his prior acceptance.  Accordingly, Whitt has not identified a valid basis to conclude that his assent to the Agreement's arbitration provision was inadequate.

### B. Remaining Factors

The remaining three factors in the relevant inquiry—whether the plaintiff's claims are within the scope of the arbitration agreement, whether Congress intended any federal statutory claims to be arbitrable, and whether to stay the proceedings if some, but not all, of the plaintiff's claims are arbitrable—are undisputed.  *See JLM Indus.*, 387 F.3d at 169.  Specifically, it is undisputed that (1) Whitt's claims in this case are within the scope of the Agreement's arbitration provision, which covers "any dispute, claim, or controversy (whether based on contract, tort, intentional tort, constitution, statute, ordinance, common law, or equity, whether pre-existing, present, or future, and whether seeking monetary, injunctive, declaratory, or any other relief) arising from or relating to this Note or the relationship between [the applicant] and [Prosper]," Agreement ¶ 22(a)(iii); (2) Congress intended ADA claims to be arbitrable, *see* 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter."); and (3) all of Whitt's claims are subject to arbitration.

### C. Unconscionability

Whitt's principal argument is that enforcing the Agreement's arbitration provision would be unconscionable because arbitration in this case is cost prohibitive. The Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree*, 531 U.S. at 90; *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310-11 (2013) (stating that the "effective vindication" exception to the enforceability of arbitration agreements "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable"). The Court has cautioned, however, that the mere "risk" of prohibitive costs "is too speculative to justify the invalidation of an arbitration agreement," and that "a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 91.

Here, in attempting to demonstrate that arbitration would be prohibitively expensive, Whitt has submitted evidence establishing that he is impoverished. *See* Dkt. No. 30 (Whitt Declaration), Ex. A (tax return), Ex. B (letter from Social Security Administration), Ex. C (bank statement). Additionally, Whitt asserts that "the expected cost differential between arbitration and litigation in court is substantial." Whitt Opp. at 8. In support of this assertion, he cites Rule 31 of the JAMS Comprehensive Arbitration Rules & Procedures, which provides, in relevant part, that "[e]ach Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses." *Id.* (quoting JAMS Comprehensive Arbitration Rules & Procedures, Rule 31, *available at* http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule31). Though Whitt acknowledges that Prosper agreed to pay all costs up to $1,000 and to "consider" any request to pay additional costs, *see* Agreement ¶ 22(d), he contends that this arrangement "creates a default rule [of] placing the entire cost of arbitration above $1,000 solely on [his] shoulders." Whitt Opp. at 9. Finally, Whitt asserts, without support, that "the cost differential

9

between arbitration and federal court cannot be understated," because, "[b]eyond the filing fee, parties litigat[ing] in federal court pay nothing to the tribunal and bear only their expert witness, discovery, and attorney fees," and because "the arbitrator's fees in this case will certainly exceed Mr. Whitt's meager annual income." *Id.*

Whitt plainly has not sustained his burden of demonstrating that arbitration would be prohibitively expensive for several reasons. As Prosper notes in its motion, Whitt has not submitted any *evidence* bearing on the likely costs of arbitration in this case. Following the Supreme Court's guidance in *Green Tree* that speculation as to a risk of prohibitive costs does not justify invalidating an arbitration agreement, *see* 531 U.S. at 91, courts in this Circuit have declined to invalidate arbitration agreements absent such evidence, *see, e.g., Senisi v. John Wiley & Sons, Inc.*, No. 13-cv-3314 (LTS) (AJP), 2015 WL 256094, at *5 (S.D.N.Y. Jan. 21, 2015) (declining to invalidate arbitration agreement where the plaintiff made "no showing of what financial burdens she might be forced to bear in arbitration" and instead "simply speculate[d] that the costs to her would be exorbitant"); *Reynolds v. de Silva*, No. 09-cv-9218 (CM), 2010 WL 743510, at *6 (S.D.N.Y. Feb. 24, 2010) (declining to invalidate arbitration agreement where the plaintiff's estimate as to the likely arbitration costs was "entirely speculative"); *Gill v. World Inspection Network Int'l, Inc.*, No. 06-cv-3187 (JFB) (MLO), 2006 WL 2166821, at *6 (E.D.N.Y. July 31, 2006) (declining to invalidate arbitration agreement where the plaintiff "failed to proffer a scintilla of evidence regarding the costs of arbitrating . . . , other than his conclusory statement that it would cause him tremendous hardship").[1]

---

[1] According to Whitt, "when plaintiffs have very limited financial means, such as Mr. Whitt, courts permit arbitration only upon a showing that there is no risk that the plaintiff will pay more to arbitrat[e] his claims than to litigate in federal court." Whitt Opp. at 8. The cases cited by Whitt, however, do not support this proposition, which reverses the applicable burden and is not an accurate statement of the law in this Circuit. *See, e.g., Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 338 (S.D.N.Y. 2014) (holding that the plaintiff's declarations that she was unemployed with no income or assets did not "satisfy [her] burden to show a likelihood of incurring [prohibitively expensive arbitration] costs for multiple reasons" (internal quotation marks omitted)).

Just as importantly, Prosper correctly notes in its reply brief that Whitt has overlooked the JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness (the "JAMS Consumer Standards"). *See* Prosper Reply at 8-9. These Standards apply to all JAMS arbitrations where, as here, "a company systematically places an arbitration clause in its agreements with individual consumers and there is minimal, if any, negotiation between the parties as to the procedures or other terms of the arbitration clause."[2] *See* Dkt. No. 34 (Declaration of Gregory F. Hurley), Ex. A (JAMS Consumer Standards) at pg. 1 n.1. The JAMS Consumer Standards provide, in relevant part, as follows:

> With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration.

*Id.* at ¶ 7. As Prosper appears to concede, *see* Prosper Reply at 8-9, given that it agreed to pay all arbitration fees up to $1,000, *see* Agreement ¶ 22(d), it will be required to pay all fees and costs associated with arbitration in light of this provision.[3] Of course, this conclusion precludes Whitt

---

[2] By contrast, the Court takes judicial notice of the fact that the JAMS Comprehensive Arbitration Rules & Procedures—which require each party to pay its *pro rata* share of fees and expenses and which Whitt relies on in his brief—apply only by agreement or to "any disputed claim or counterclaim that exceeds $250,000." JAMS Comprehensive Arbitration Rules & Procedures, Rule 1, *available at* http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule1; *see also Klein v. ATP Flight Sch., LLP*, No. 14-cv-1522 (JFB) (GRB), 2014 WL 3013294, at *10, *10 n.6 (E.D.N.Y. July 3, 2014) (noting that courts may take judicial notice of arbitration rules). There is no indication that the parties agreed to apply the JAMS Comprehensive Arbitration Rules & Procedures or that Whitt is seeking damages in excess of $250,000. In any event, to the extent there is any question as to which set of rules will apply at arbitration in this case, Whitt's burden to demonstrate that arbitration is cost prohibitive requires him to establish that the rules imposing lesser costs—the JAMS Consumer Standards—will *not* apply. *Cf. Damato v. Time Warner Cable, Inc.*, No. 13-cv-994 (ARR) (RML), 2013 WL 3968765, at *11 (E.D.N.Y. July 31, 2013) (declining to invalidate arbitration agreement where the plaintiffs failed to demonstrate "that they would not qualify for any waivers of fees" under applicable AAA rules).

[3] As noted, under the Agreement, Prosper is required only to "consider" any request to pay costs in excess of $1,000. *See* Agreement ¶ 22(d). This portion of the Agreement is, at the very least, in tension with the above provision of the JAMS Consumer Standards. This tension, however, cannot be resolved in favor of the Agreement if arbitration is to proceed through JAMS. *See* JAMS Consumer Standards at pg. 1 ("JAMS will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers *only if* the contract arbitration clause and specified applicable rules comply with the following minimum standards of fairness." (emphasis added and footnote

11

from establishing a likelihood that the costs of arbitration will be prohibitively expensive. *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 413 (S.D.N.Y. 2003) (declining to invalidate a consumer arbitration agreement based on prohibitive costs in light of the above provision of the JAMS Consumer Standards).

Finally, even assuming, *arguendo*, that Whitt will be required to pay any arbitration fees, he is entitled under the Agreement to recover those fees in the event that he prevails at arbitration (conversely, should Prosper prevail, it is *not* entitled to recover arbitration fees from Whitt). *See* Agreement ¶ 22(d). As a result, Whitt can incur arbitration fees only if he does not prevail at arbitration. Whitt understandably has not attempted to demonstrate that he is unlikely to prevail at arbitration, and there otherwise is not a sufficient basis for the Court to make such a merits determination at this stage of the proceedings. Any conclusion as to who will bear the costs of arbitration would be unduly speculative for this additional reason. *See Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003) (declining to invalidate arbitration agreement containing a similar fee-shifting provision and reasoning that "[w]hether [the plaintiff] will, in fact, incur . . . fees in this matter depends entirely on whether he prevails in arbitration," an issue on which "there is no record that could be made at this point"). Accordingly, Whit has not established that enforcing the Agreement's arbitration provision would be unconscionable on the ground that arbitration is cost prohibitive. The Agreement's arbitration provision is thus enforceable and Whitt's claims must be arbitrated pursuant to the FAA.

**D.     Remedy**

Having concluded that Whitt's claims must be arbitrated, the Court must determine whether to dismiss the case or to stay it pending arbitration. *See Robinson*, 2015 WL 3486119, at *11. Courts in this Circuit have generally determined that, where, as here, all of the plaintiff's claims must be

---

omitted)); *see also* Agreement ¶ 22(g) ("If any portion of this Section 22 [governing arbitration] is declared invalid or unenforceable for any reason, it shall not invalidate the remaining portions of this section.").

arbitrated, dismissal is preferable, since "no useful purpose [would] be served by granting a stay." *Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002); *accord Robinson*, 2015 WL 3486119, at *11; *Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, No. 03-cv-1162 (WHP), 2003 WL 22024070, at *3 (S.D.N.Y. Aug. 28, 2003); *Johnson v. Tishman Speyer Properties, L.P.*, No. 09-cv-1959 (WHP), 2009 WL 3364038, at *4 (S.D.N.Y. Oct. 16, 2009); *Duran v. J. Hass Grp. L.L.C.*, No. 10-cv-4538 (RRM) (SMG), 2012 WL 3233818, at *5 (E.D.N.Y. June 8, 2012); *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001). The Court agrees with the reasoning of these cases and opts to dismiss rather than stay Whitt's claims in favor of arbitration.

**IV.  Conclusion**

For the foregoing reasons, Prosper's motion to dismiss and to compel arbitration is granted, and this action is dismissed without prejudice in favor of arbitration. The Clerk of Court is instructed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated: July 14, 2015
New York, New York

GREGORY H. WOODS
United States District Judge